Morning, Your Honors. Kenneth Brooks on behalf of Appellant. The case is pretty straightforward. I believe that it's distinguishable from what I consider the most relevant Supreme Court case on this fact, on these facts before us. That's B&B Hardware Inc. and the distinction between what's going on in our particular case here and what happened in B&B is, in B&B, it was about issue preclusion. You had allegations that were actually litigated on the merits. So the Court had something to go by to determine whether or not these parties had actually addressed the issues which were before it in a subsequent filing. In the case at bar, what we have here is a default judgment. At least that's what I thought it was until I read the SIR reply. But do you disagree that a default judgment is litigating it on the merits? Well, it's not actually litigated, which is what is required in B&B, and that's what they address. You mean it's not actually litigated? Well, it's not actually litigated. They don't know what the issues were actually presented, and that's because of the problem with notice pleading. But here it's claim – but here we're talking about claim preclusion, not issue preclusion, right? Yes, Your Honor. So, I mean, to me it seems fun – one of the differences here is that you couldn't have obtained the same relief. The relief that's being sought in this case was not available before the TTAB. Is that correct? Yes, Your Honor. And what impact does that have? Well, the – well, we – why would we file in that case? And I believe that's what happened. In the TTAB, we have a foreign plaintiff. It's a foreign company who's not familiar with our procedures. And I believe what might have happened is they went into the TTAB and said, whoa, this isn't what we want. We want to assert our rights. And in the TTAB, all you can do is preclude registration. So what's happening in our case is we're bringing forth affirmative relief with monetary damages, which we desire. You can't get that in the TTAB. And the – But your client withdrew their opposition in the TTAB. Is that correct? No, Your Honor. I would say they walked away because they were given a couple of times to move the opposition forward, and then they did not respond, and then a judgment was entered. A judgment granting the trademark. No, a judgment granting registration of the mark. And that's kind of what's going on here, is that a mark has three critical elements. It has the indicator, which in this case is a word, indicia. It has the goods or services to which it's It's the use. You have to use a mark. And within that, there's a geographical aspect of that use, because you can have a trademark that's registered on the Federal Register by someone else in a sub-geographic area of the United States through a concurrent use proceeding. And you do that, and that results from you having prior use of that mark. And that's part of the problem here, is we have state rights. We have asserted a Federal cause of action premised upon our state rights, and that's the California trademark rights, the common law rights that arose in California. Even if it is that broad, it hasn't been litigated. I mean, I know for a fact that it was used in the Sacramento area. That's why there's a specific pleading in the complaint of the inter-district transfer to the Sacramento court, as opposed to Fresno, that we know exactly where it was used. We're not sure how broad it is. That's part of what goes on with trademark infringement litigation. But going back to the — in the TTAB, if you appeal — let's presume that VVV are We call it 3V, Your Honor. 3V. Okay. Let's assume that 3V had challenged that. Presumably, they — well, even the default judgment, presumably, they could have appealed that. Where would that have gone? That would have gone to the Federal Circuit? Yes, Your Honor. And could the Federal Circuit at that point have expanded its analysis beyond just registering the initial trademark? Could they have granted any damages or anything? I don't believe so, Your Honor. I believe that you can only raise issues on appeal that were raised in the lower effect finding tribunal. As a matter of fact, that is the rule, as the way I understand it. Which brings us to the case about the claim splitting. I mean, you want to — we were told to be prepared to discuss that, and I think it's waived. The first time it's ever been brought up is on a SIR reply. And, you know, there's Martinez-Serrano v. Immigration, 94F3D-1256. Wait. What do you think's been waived? The — the claim splitting allegation that they — that the — Well, as I understood it, the question was whether 3V had brought up below the — as I — well, what did you argue below? 3V, I thought, just argued that we don't satisfy — or this case doesn't satisfy any of — or at least one of the four requirements for claim preclusion. Is that right? Yes, Your Honor. That's part of it. But I thought — I saw the waiver question as, did Triple V or 3V, did they raise the issue below that even if we don't satisfy — or even if all four requirements of claim preclusion are met under the Ninth Circuit test, there's an exception to that where you can't grant relief, where the relief that we're requesting now couldn't be granted. That's not part of the initial four-factor test. And I thought the argument that I was interested in hearing from is, why isn't that waived on your part? To me, that seems like the strongest argument you have. Well, we did raise the issue time and again in our opening brief that claims we're seeking relief for in the district court, the TTAB could not be granted. I mean, they just did not have the jurisdiction, which goes right to the point of it's not a court or a tribunal of competent jurisdiction by which claim preclusion — But did you argue that issue below in the district court? Yes, Your Honor. And we briefed it as well. Yes, Your Honor. Okay. Oh, yeah. We argued that one. And, you know, part of the issue with respect to the — it actually is both the second issue about why did the district court deny us entering our amended complaint, and this one, it's about the pleadings. I mean, Federal courts have an affirmative duty to assert their jurisdiction over Federal causes of action. And with the notice pleading in the TTAB, you really can't determine what the jurisdiction or the issues were being asserted by the TTAB, and what was being — you know, what the relief would have been down there. The notice pleading precludes a Federal district court looking at a default judgment based just on a — in this instance, a petition and an answer from knowing exactly the issues that were going to be addressed, what evidence would come forward. And that's why I think it's interesting about the B&B is Justice Alito makes very clear that he is talking about claim preclusion in another tribunal that were actually had this here. And so, in this instance, I think the court has to be very mindful not to use judicial science to ignore its affirmative duty to assert its jurisdiction over these claims. And that comes right out of Moses H. Cone Memorial Hospital v. Mercury Construction, 460 U.S. 1, 1983. And that's really what I think is the problem here, is that a district court said, oh, you know what, that's close enough, it's a default, and, you know, even though it has limited jurisdiction, it's very limited by Congress, we're just not going to try to figure out what happened there. We have the two parties, and it looks like trademarks, so that's it, we're done. So in that respect, I believe that the district court was basically using judicial theory to avert its affirmative duty to assert jurisdiction over that Federal cause of action, which is unfair competition based upon a State trademark right. Well, your client originally opposed in that TTAB, and then withdrew the opposition, right? Well, they didn't withdraw. They walked away and had a default entered against them. Well, that's essentially the same thing, I guess. Okay. If you walk away from it after you've filed a claim, I guess that's the same thing. Okay. That's all I have. Do you have any more questions? No. Why don't you reserve the rest of the remainder of your time? Yes, Your Honor. Okay. Thank you, Mr. Brooks. Let's hear from Mr. Reynolds. Good morning, Your Honors. John Reynolds from Baker and Reynolds for the Pelley. The trademark office, a proceeding in the trademark office tracks a proceeding before a Federal district court. The they are bound by the Federal rules of evidence, and they're bound by the Federal rules of civil procedure. Could 3-V obtain damages before the TTAB? No, they could not. And so why isn't that dispositive under that restatement second of judgment, 26-1C? Yes. Well, before you get to the issue of damages, you get to the issue of liability. And in the trademark office, just like with a civil trial cover sheet, you list the claims that you're making. And those claims are all cognizable and adjudicable before the Trademark Trial and Appeal Board. In particular, you start out with the first, in this notice of opposition, that is an issue. The first claim was for likelihood of confusion under Section 2D of the Lanham Act. And in order to present that claim, which is part of the pleadings in the notice of opposition, you have to show, number one, that you have a valid right in a mark. Number two, you have priority. And number three, there's a likelihood of confusion. That was determined by the judgment. Well, was it determined by the judgment? And I guess the claim was determined, but the issues weren't determined. The claim was determined, yes. Because of the default judgment. If you can call it a default judgment. I mean, there was an answer and everything was denied, so issue was adjoined. Well, everybody's called it a default judgment, haven't they? I have not. Okay. In fact, it doesn't say default judgment in the board's order. The board issued an order to show cause why judgment should not be entered against the plaintiff for its failure to prosecute, basically. But ultimately, the judgment was on failure to prosecute. It wasn't necessarily on the merits. Bear in mind, I don't think that matters for claim preclusion. But I think it would matter for issue preclusion. It would, absolutely, yes. But going back, the trademark office has the authority to determine or to rule upon a claim. And they ruled upon the claim by virtue of this, if you want to call it default judgment, which I don't. But nevertheless, they ruled on that claim. And that claim involved ownership.  It involved likelihood of confusion. Also, it involved the secondary issue of whether or not there was the issue of whether or not the applicant in that case, my client, had tried to defraud the trademark office into giving him a trademark registration. What's the best relief that VVV could have received from the TTAB in your case? Yes, yes. The TTAB has authority to do that, to rule on dilution issues. If you go into the CFR, you'll see that the trademark office has the right to determine and to rule upon a whole slew of issues, not issues, but causes of action, including descriptiveness, geographical descriptiveness. There's a whole just genericness. There's just a whole bunch of things that they have the right and authority to rule upon. Well, what kind of relief could VVV have received there? Well, the thing is— Under the best scenario, what could they receive? They could not have received monetary relief because my client, in effect, received an equitable remedy, which is the issuance of the registration, which gave it prima facie evidence of the validity of the mark and of their exclusive right to use the mark. It's a presumption. But nevertheless, it's real. But if VVV had been successful, they could then, in my understanding, they could then go to a federal court and they could seek for monetary damages under 26C. Yeah, but they really couldn't because at that point you wouldn't have used the mark. Or I guess that presumes you would have used the mark before you registered it, I guess. Well, and that's, in fact, happening. In fact, although it's not in the papers here, our client had used the mark prior to the notice of opposition being filed. I know there's a big to-do about— But, see, I think what you just said almost gives away your case because what you said is if the TTAB had invalidated the mark, then 3V still would have had to go to the district court in order to get damages for anything, any misuse of the mark or any infringement. They couldn't have sought that from the TTAB. They could have gone, yes. But the whole time they could have gone to the federal district court to begin with. They chose that particular forum. And in the restatement it says if you choose a forum that does not give you all of the rights and all of the remedies that you're entitled to, that's the risk you take. Well, that seems pretty—first of all, where does it say that? What section are you talking about? But I have a problem with that because that would suggest that anyone who comes in and opposes in the TTAB then waives any damages. And that seems— No, no, they don't. You have the right. Number one, you have the right to appeal not just to this federal circuit court. I stopped you. What was the section? Or, yeah, if you have it. Because, yeah, and if you need to submit something supplemental, we can do that. I had it here, but I just— Because I was not aware of anything that said that if you had gone to a forum that wouldn't allow a certain relief that you waive it. It doesn't say that you waive it, but it does discuss the issue, and it says that in many cases that if you pick a particular forum, knowing that it's a forum of limited jurisdiction, you're stuck with that forum. But in this case, your right to appeal a decision of the Trademark Trial and Appeal Board isn't just to the Federal Circuit Court of Appeals. You have the right to appeal to a federal court for a trial de novo where you can present all of your claims, all of your remedies. But they didn't do that. During the entire procedure of the notice of opposition, you can go into a federal court and sue for trademark infringement and add all of your claims if you want to and suspend a trademark office proceeding during that period of time. So, yeah, let me ask that because I was confused by this whole process. If they had appealed to the Federal Circuit, could they have also raised new issues before the Federal Circuit? No. But do you appeal it to the district court? There's some provision that allows you to appeal a TTAB decision to a district court. You can either appeal it. You can appeal it to the commissioner, but you either can appeal it to the Federal Circuit Court, and that's just determining whether or not the TTAB decision. Got it right on the cancellation or whatever. Or you can appeal to a federal court for a trial de novo. And if you appeal it to a federal court for a trial de novo, then you could raise everything. Anything you want. Yes. But they didn't do that. They didn't, no. But then if they didn't do that, doesn't that mean – okay. Hey, can you briefly address the Jett case from the Federal Circuit? Because in the Jett case, the Federal Circuit said that they are not a district court decision and a TTAB proceeding, or those two proceedings don't necessarily stem out of the same common nucleus of facts. Well, I can address it by saying in BBB Hardware v. Hargis, the U.S. Supreme Court said just the opposite and said that a Section 2D claim and a claim for a common law for unfair competition or trademark infringement are identical for purposes of what was before the court. So you believe Jett is no longer good law then? Correct. On a number of issues. Jett also said that you had to have a federal registration. You don't have to have a federal registration. Okay. On the issue of abuse, we started to talk a little bit about that, and our client actually had used the mark prior to that time. In a trademark office notice of opposition proceeding, it's just like a federal district court case. You start out with your pleadings. You have your discovery conference. You schedule everything. You have a period of discovery where you can do interrogatories, requests for documents, admissions, depositions. Then you go to a trial stage where you submit all of your evidence, and you can have live testimony in the nature of a deposition or you can have affidavit testimony. The only difference between these two forums, other than the rights and remedies, the only other difference would be that you don't actually do this in front of a judge. You submit this to the Trademark Trial and Appeal Board, but you do have the right afterwards to argue your case before a three-member panel of judges at the Trademark Trial and Appeal Board. These judges are experts in trademark law. So there's really no distinction between the two. Counsel, you're over your time. You may want to sum up, please. Pardon me? You're over your time. Okay. I'm sorry. You're welcome to sum up if you wish. Yes. Okay. There's no – it's my understanding by reading the papers that there was nothing in the case below, in the district court or in the Trademark Trial and Appeal Board, where the 3V raised the issue of subject matter jurisdiction. And I would submit that they waived that, and they didn't raise it until just recently in this case. We know what was presented. They said they don't know what issues were presented. All of the issues that were presented in the trademark office are the relevant claims for purposes of this case as to whether or not res judicata applies. That's it. Thank you very much. Okay. Thank you, Mr. Reynolds. Mr. Brooks? We took some of your time, and your opposing counsel went over, so I'll add another minute to your time. Okay. Thank you, Your Honor. I shouldn't need it. So the arguments are clear throughout the entire record. I mean, when we oppose the first motion to dismiss, we raise these issues of JET, then. And JET is all over the fact that certain issues can be adjudicated in the TTAB and certain issues cannot. Going back, I think just distinguishing the Supreme Court case, B&B, it's clear that Justice Alito was stating that we knew what was adjudicated. That was claim percuse — I mean, issue preclusion. That's because they actually had the depositions and all. We don't have that here. And this is more of an issue for when can the court use judicial theory to say, you know what, I'm not going to assert my jurisdiction. And I don't think that the courts can do that. I think on these facts, the district court has to ignore that default and move forward and hear the case. I submit. Thank you, Mr. Brooks. We thank both counsel for the argument. 3B and Sons, Edible Oils v. Meenakshi, is submitted with that. We've completed the oral argument calendar for the day, and the court stands adjourned. All rise.
judges: Siler, Bybee, R. Nelson